JOHN W. HUBER, United States Attorney (No. 7226)
ROBERT A. LUND, Assistant United States Attorney (No. 9579)
KARIN FOJTIK, Assistant United States Attorney (No. 7527)
ALICIA H. COOK, Trial Attorney, U.S. Department of Justice (No. 8851)
MARK K. VINCENT, Assistant United States Attorney (No. 5357)
PATRICK T. MURPHY, Trial Attorney, U.S. Department of Justice (NY Bar #2750602)
ADAM L. SMALL, Trial Attorney, U.S. Department of Justice (MD Bar)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah  84111
Telephone:  (801) 524-5682

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RON ROCKWELL HANSEN,<br><br>Defendant. | Case No.  1:18-CR-00057-DB<br><br>**GOVERNMENT'S MOTION FOR A PRETRIAL CONFERENCE PURSUANT TO SECTION 2 OF THE CLASSIFIED INFORMATION PROCEDURES ACT**<br><br>District Judge Dee Benson<br>Chief Magistrate Judge Paul M. Warner |

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, and hereby respectfully moves the court, pursuant to Section 2 of the Classified Information Procedures Act (CIPA), 18 U.S.C. App. 3, to hold a pretrial conference to consider matters relating to classified information that may arise in connection with the above-captioned matter.  The instant motion provides an overview of the Classified Information Procedures Act and the Security Procedures promulgated under it.  This motion further raises issues for the court to consider at the initial (CIPA, Section 2) pretrial conference.

–1–

## I. **Introduction**

The case at bar involves both classified and unclassified information.  Classified

information, by definition, implicates important national security interests.  As a general

proposition, CIPA and the judicially created Security Procedures it mandated[1] establish

procedural safeguards designed to minimize the risk of unauthorized disclosure of classified

information.  *See United States* v. *Bin-Laden*, 58 F. Supp. 2d 113, 117-18 (S.D.N.Y. 1999)

(citing S. Rep. 96-823 (1980), reprinted in 1980 U.S.C.C.A.N. 4294), *aff'd*, 213 F.3d 74 (2nd

Cir. 2000), *cert. denied*, 531 U.S. 881 (2001).  Consistent with those security procedures, a

pretrial conference may assist the court in determining how best to protect both national security

interests and the defendant's right to a fair trial.[2]

As a threshold question, the court must determine how to handle pretrial discovery of

classified information.  Security procedures preclude government employees from disclosing

classified information to persons who do not possess a security clearance and a "need to know"

---

[1]Section 9 of CIPA required the Chief Justice of the Supreme Court, in consultation with key Executive Branch officials, to promulgate "rules for establishing procedures for the protection of unauthorized disclosure of classified information in the custody of the United States District Courts, courts of appeals, or Supreme Court."  These "security procedures" are reprinted after the statutory provisions in Title 18, United States Code Annotated, Appendix 3 (as well as after the Title 18 statutory provisions in the Thompson/West *Federal Criminal Code and Rules*, 2008 Edition).  Among other things, the Security Procedures require appointment of a court security officer, security clearances for court personnel involved in handling the case, "secure quarters" for proceedings which involve classified information, and special facilities and procedures for receiving, storing, and transmitting classified material.  A certified Department of Justice Security Officer is available to assist the Court in fulfilling the requirements of these security procedures.

[2] Obviously, it is "easier and more effective to prevent the release of classified information in advance than to attempt to undo the damage of unauthorized disclosures after the fact."  *Id.*

the information.  Under CIPA, the court may order disclosure of classified discovery material, but the court must carefully fashion appropriate protective orders taking into account the identities and "trustworthiness" of "persons associated with the defense"[3] who will receive such information.  *See* Section 3 of CIPA and Section 5 of the CIPA Security Procedures.

CIPA mandates a number of procedures at the pretrial, trial and appellate stages of a criminal case to enable courts to protect a defendant's right to due process, including the right to a fair trial, and to protect the government's interest in classified information, sources and methods. *See United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) ("CIPA creates a pre-trial procedure for ruling upon the admissibility of classified information."); *United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) (CIPA's fundamental purpose is to "protect[] and restrict[] the discovery of classified information in a way that does not impair the defendant's right to a fair trial."); *United States v. Sterling*, 724 F.3d 482, 515 (4th Cir. 2013) (CIPA "was designed to balance the defendant's interest in a fair trial and the government's interest in protecting national security information."); *United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998) (discussing the balance between national security and the due process rights of the defendant).

---

[3]"Persons associated with the defense" includes defense counsel and office staff assisting defense counsel.  That designation may also include lay witnesses, expert witnesses, and consultants.

II.     **CIPA Overview**

Prosecuting violations of Federal criminal laws and protecting the nation's security secrets constitute two of the most important duties assigned to the Executive Branch.  As the Supreme Court duly noted, "[i]t is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation."  *Haig* v. *Agee*, 453 U.S. 280, 307 (1981).  In light of this obligation, Congress enacted CIPA in 1980 in response to the problem of graymail, that is, threats by a defendant to disclose classified information in the course of criminal litigation.  Congress designed the statute to reconcile a defendant's right to obtain and introduce exculpatory material with the government's duty to protect from disclosure sensitive information that could compromise national security.  *See United States v. Pitt*, 193 F.3d 751, 756 (3d Cir. 1999); *United States* v. *Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998).  Prior to the enactment of CIPA, the government was forced to anticipate whether the defendant would seek to disclose classified information in connection with the litigation of a case and guess whether the court would admit such information at trial.  *See United States* v. *Collins*, 720 F.2d 1195, 1196-97 (11th Cir. 1983).

CIPA establishes pretrial, trial, and appellate procedures for federal criminal cases in which the possibility for public disclosure of classified information exists. Under these procedures, the court resolves issues concerning the discovery of classified information by the defendant.  The court typically resolves such issues *ex parte* and *in camera*, and the court notifies the government prior to trial whether the court will authorize the disclosure of classified information in open criminal proceedings.  The government can then make an informed decision regarding how to proceed.  *Id.*

–4–

CIPA requires that the defendant provide written, pretrial notice of the classified information he reasonably expects to disclose. The government may then seek a ruling regarding the relevancy and admissibility of the classified information proffered by the defendant. If the court rules that any of the information is admissible, CIPA permits the government to move for and the court to authorize the deletion of classified information from documents made available to the defendant in discovery. *See United States* v. *Yunis*, 867 F.2d 617, 621-622 (D.C. Cir. 1989).

The government may also move the court to substitute a summary for the proffered information or, alternatively, substitute a statement admitting facts that the classified information would tend to prove, thereby obviating the need for disclosure of the specific sensitive information. *Id.* If the court finds the substitution inadequate to preserve the defendant's right to a fair trial and the government continues to object to the use of the information, the court must nevertheless order that the defendant not disclose the classified information, but the court may then impose sanctions.

CIPA also provides *ex parte*, *in camera* procedures for the protection of classified information subject to discovery under Fed. R. Crim. P. 16, *Brady* v. *Maryland*, 373 U.S. 83 (1963) and Rule 26.2 (formerly the *Jencks* Act, 18 U.S.C. § 3500 (1976)). *See United States* v. *Pappas*, 94 F.3d 795 (2d Cir. 1996). The government may also take an interlocutory appeal from any order by the court authorizing the disclosure of classified information. CIPA, Section 7.

**III.**   **Definitions, Pretrial Conference, Protective Orders and Discovery**

    **A.**   **CIPA Section 1:  Definition of Terms**

Section 1(a) of CIPA defines classified information as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. App. 3, § 1(a).  Section 1(b) defines "national security" to mean the "national defense and foreign relations of the United States."  *Id.*  at 1(b) This case involves just such information and material determined by Executive Order or regulation to require protection for reasons of national security.

CIPA applies equally to classified testimony and classified documents. *See United States v. Lee*, 90 F. Supp. 2d 1324, 1326 n.1 (D .N.M. 2000) (citing *United States v. North*, 708 F. Supp. 399, 399–400 (D .D.C. 1988)); *Kasi v. Angelone*, 200 F. Supp. 2d 585, 596–97 (E.D. Va. 2002) (applying CIPA to classified testimony).

    **B.**   **CIPA Section 2:  Pretrial Conference**

Section 2 of CIPA provides that "[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution."  18 U.S.C. App. 3, § 2. Following such a motion, the district court, "shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by section 5 of this Act (notice of defendant's intent to disclose classified information), and the initiation of the procedures established by section 6 of this Act (to determine the use, relevance, or admissibility of classified information)."  *Id.*

In connection with such a hearing, "the court may consider any matters which relate to classified information or which may promote a fair and expeditious trial." *Id.* Consequently, the court may take up matters concerning security procedures, clearances and the like. The legislative history of CIPA emphasizes that while this provision gives the district court the same latitude as under Rule 17.1, the court should not decide substantive issues concerning the discovery or use of classified information at the Section 2 conference. *See* S. Rep. No. 823, 96th Cong., at 5-6, *reprinted in* 1980 U.S. Code Cong. & Ad. News at 4298-4299. Rather, CIPA requires the court to decide such issues according to the provisions of Sections 4 and 6.

Moreover, to foster open discussions at the pretrial conference, Section 2 provides that no admission made by the defendant or his attorney at the pretrial conference may be used against the defendant unless the admission is in writing and signed by both the defendant and his attorney. 18 U.S.C. App. 3, § 2.

### C.     CIPA Section 3:  Protective Orders

Upon the request of the government pursuant to Section 3, the Court must issue an order, "to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case." 18 U.S.C. App. 3, § 3. The protective order applies to all materials furnished to the defense under the government's discovery obligations and may also prevent the defendant from disclosing classified information already in his possession. The Government anticipates requesting such an order.

In addition to prohibiting such disclosure, protective orders issued under CIPA generally set forth rules for all parties governing the use and storage of classified information. Section 3 was also intended to codify federal courts' well-established practice to issue protective orders

based on courts' inherent authorities, as well as to supplement federal courts' authority under Rule 16(d)(1) to issue protective orders in connection with the discovery process. In contrast to the discretionary authority in Rule 16(d)(1), however, Section 3 of CIPA provides that the court must issue a protective order whenever the government discloses classified information to a defendant in connection with a prosecution.  *See* H.R. Rep. No. 96-831, part 1, at 26 (1980).

## IV.   CIPA Section 4:  Discovery of Classified Information by the Defendant

Subject to the protective order provisions of Section 3 and Rule 16(d) of the Federal Rules of Criminal Procedure, Section 4 provides for pretrial discovery, including that of classified material.  18 U.S.C. App. 3, § 4.  While CIPA creates no new rights of or limits on discovery, it does require courts to consider secrecy concerns when applying general discovery rules.  *See Yunis*, 924 F.2d at 1089.

The granting of security clearances for the appropriate persons associated with the defense may greatly facilitate the discovery process.  However, to obtain a clearance, eligible persons must submit to a background investigation and complete the required application.  If defense counsel decides to request clearances for additional individuals associated with the defense, the court should set a deadline for identifying the individuals involved and submitting the necessary information.  The process of conducting the necessary investigation and adjudication of the background information can take a considerable amount of time.

After the resolution of any issues related to security clearances, the court can begin to address substantive issues, including discovery.  In *Yunis*, the Court of Appeals for the District of Columbia Circuit established a three-pronged test for the discovery of classified information otherwise discoverable under Rule 16.  924 F.2d at 1089.  To qualify for discovery under CIPA,

a defendant must make a threshold showing regarding the relevancy of the requested material. If the defendant makes such a showing, the court must then determine whether the government asserts a colorable claim of privilege, that is, a basis exists to classify the document or information at issue. *Id.* If the government asserts such a claim, the defendant must show that the information helps his defense. *Id.*

Even when a defendant makes the requisite showings, the court can balance the defendant's interests in obtaining the information against the government's obligation to protect the national security. *See Sarkissian*, 841 F.2d at 965. The legislative history of Section 4 makes clear that the court may take the national security interests into account when considering a government request to preclude discovery of classified information. S. Rep. No. 823, 96th Cong., at 6, *reprinted in* 1980 U.S. Code Cong. & Ad. News at 4299-4300 (Advisory Committee on Rules commenting that the protection of information vital to the national security is "among the considerations taken into account by the court" in deciding whether to permit discovery to be "denied, restricted or deferred").

Even if discoverable, Section 4 provides that the court "may authorize the United States to delete specified items of classified information from documents provided to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting the relevant facts that classified information would tend to prove." 18 U.S.C. App. 3, § 4; *see also*, *United States v. Sedaghaty*, 728 F.3d 885, 904 (9th Cir. 2013); *Rezaq*, 134 F.3d at 1142.

Therefore, upon the government's request, the court may permit alternatives to the disclosure of classified information. Section 4 further provides that the government may

demonstrate the necessity of such alternatives in an *in camera, ex parte* submission to the court. *See Yunis*, 867 F.2d at 619.

Similarly, the Federal Rules of Criminal Procedure provide that "[u]pon a sufficient showing," a district court: "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). The legislative history of CIPA makes clear that Congress intended Section 4 to clarify the district court's power under Rule 16(d)(1) to deny or restrict discovery in order to protect national security. *See* S. Rep. No. 96-823 at 6, 1980 U.S.C.C.A.N. at 4299-4300; *see also United States v. Pringle*, 751 F.2d 419, 427 (1st Cir. 1984).  Section 4 of CIPA, like Rule 16(d) of the Federal Rules of Criminal Procedure, provides that the United States may file its Section 4 motion in the "form of a written statement to be inspected by the court alone." *See* 18 U.S.C. App. 3, § 4 ("The court may permit the United States to make a request for such authorization ["to delete specified items of classified information"] in the form of a written statement to be inspected by the court alone."); Fed. R. Crim. P. 16(d)(1) (the government may move for a protective order "ex parte").

In essence, Section 4 allows the United States to request that the court review classified information *ex parte* and *in camera* to determine its discoverability under Rule 16, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), or the Jencks Act, and to protect such classified information from disclosure through various means if it is discoverable. S*ee United States v. Klimavicius-Viloria,* 144 F.2d 1249, 1261-62 (9th Cir. 1998); *Rezaq*, 134 F.3d at 1142; *Yunis*, 867 F.2d at 619-625; *Pringle*, 751 F.2d at 427–28; *Kasi*, 200 F. Supp. 2d at 596 n.6.

For example, the government may request that the court deny discovery of a classified document in its entirety pursuant to Section 4 because it is not discoverable under the relevant legal standard.  *United States v. Libby*, 429 F. Supp. 2d 46, 47 (D.D.C. May 3, 2006). Alternatively, the government may file a motion under Section 4 to delete specific classified information from a document that either the government or the court deemed discoverable or to substitute an unclassified summary or admission in the place of the document.  *Id.* at 47. If the court determines that a document is not subject to discovery or, alternatively, if it permits deletion or substitution of classified information within a document, then the entire text of any *ex parte*, *in camera* pleadings shall be sealed and preserved in the court's record to be made available to the appellate court in the event of an appeal. 18 U.S.C. App. 3, § 4; *see also United States v. Aref*, No. 04-CR-402, 2006 WL 1877142, at *2 (S.D.N.Y. July 6, 2006).

Courts have upheld the government's authority to file Section 4 CIPA pleadings *in camera* and *ex parte*. *See Sedaghaty*, 728 F.3d at 908-09 ("broadside challenge to the in camera and ex parte proceedings is a battle already lost in the federal courts"); *see also Sarkissian*, 841 F.2d at 965 ("The legislative history emphasizes that 'since the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules.'") (quoting H.R. Rep. No. 96-831, part 1, 27 n. 22); *see also Klimavicius-Viloria*, 144 F.2d at 1261 ("ex parte, in camera hearings in which government counsel participates to the exclusion of defense counsel are part of the process the district court may use [.]").

When the government initiates CIPA proceedings under Section 4 or 6, there is "no due process right to receive a description of materials in the government's possession that are not

discoverable." *Id.* (citing *United States v. Mejia*, 448 F.3d 436, 458 (D.C. Cir. 2006) (noting that, in the context of CIPA, as in other discovery in criminal cases, the defendant is "not entitled to access to any of the evidence reviewed by the court. . . to assist in his argument' that it should be disclosed")).  However, CIPA permits the defendant to file his own *ex parte* submission outlining his theory of the defense to aid the court in the review of any classified materials. *See Sedaghaty*, 728 F.3d at 906 fn. 10.  Even if defense counsel holds appropriate security clearances, it "does not mean that [they are] entitled to access the government's classified filings."  *Id.* at 909.

## V.        CIPA Sections 5 and 6: Pretrial Evidentiary Rulings

Three critical pretrial steps govern the handling of classified information under Sections 5 and 6.  First, the defendant must specify in detail the precise classified information he reasonably expects to disclose.  18 U.S.C. App. 3, § 5(a).  Second, upon a motion of the government, the court holds a hearing pursuant to Section 6(a) to determine the use, relevance and admissibility of the proposed evidence.  *Id.* at § 6(a).  Third, following the hearing and formal findings of admissibility by the court, the government may move to substitute an admission of relevant facts or a summary of the classified information that the court finds admissible.  *Id.* at § 6(c).

### A.        The Section 5(a) Notice Requirement

The Section 5(a) requires a defendant who reasonably expects to disclose classified information at any trial or pretrial proceeding to provide timely pretrial written notice to the attorney for the government and the court.  *Id.* at § 5(a).  Section 5 specifically provides that notification shall take place, "within the time specified by the court or, where no time is specified, within thirty days prior to trial[.]"  *Id.*  The defendant must provide particularized

notice under Section 5(a).  *United States* v. *Collins*, 720 F.2d 1195, 1190-1200 (11th Cir. 1983)

(recognizing that "the Section 5(a) notice requires that the defendant state, with particularity,

which items of classified information entrusted to him he reasonably expects will be revealed by

his defense").  Compliance with the CIPA procedures should prevent the surprise disclosure of

classified information at trial.  The particularization requirement applies to exhibits as well as

oral testimony, whether on direct or cross-examination.  *E.g.*, *United States* v. *Wilson*, 750 F.2d

7, 9 (2d Cir. 1984).

Section 5(b) permits the court to preclude the disclosure of classified information if the

defendant fails to provide a sufficiently detailed notice far enough in advance of trial to permit

implementation of CIPA procedures.  18 U.S.C. App. 3, § 5(b);  *See United States* v. *Badia*, 827

F.2d 1458, 1465 (11th Cir. 1987) (rejecting defendant's claim that he was not obliged to file

Section 5 notice because government already knew he would assert defense involving Central

Intelligence Agency).  The thirty-day time frame required in Section 5 "seeks to provide the

government the opportunity to ascertain the potential harm to national security and to consider

various means of minimizing the cost of disclosure."  *Id.* at 1465.  Therefore, if the defendant

attempts to disclose at trial classified information not described in his Section 5(a) notice,

preclusion represents the appropriate remedy prescribed by Section 5(b) of the statute.  *See*

*United States* v. *Smith*, 780 F.2d 1102, 1105 (4th Cir. 1985).

**B.    The Section 6(a) Hearing**

Once the defendant files a notice of intent to disclose classified information under

Section 5, the government may then petition the court for a hearing under Section 6(a).  *Id.* at §

6(a).  The Section 6(a) hearing allows the court "to make all determinations concerning the use,

relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceedings." *Id.* If the Attorney General certifies that a public proceeding may result in the disclosure of classified information, section 6(a) further provides for an *in camera hearing*, with both parties present. *Id.*

At the Section 6(a) hearing, the court hears the defense's proffer and the arguments of counsel and then rules on the relevancy of the classified information identified by the defense. *Id.*; Fed. R. Evid. 401. The defendant bears the burden of establishing relevance. *United States* v. *Miller*, 874 F.2d 1255, 1276-77 (9th Cir. 1989). If relevant, the court must then determine whether to exclude the evidence under Rule 403 balancing test. *Wilson*, 750 F.2d at 9; *see also United States* v. *Cardoen*, 898 F. Supp. 1563, 1571 (S.D. Fla. 1995).

The court should take cognizance of the government's interest in protecting national security and the defendant's interest in receiving a fair trial when ruling on the admissibility of classified information, and the court should allow the admission of such evidence only when helpful to the defense or essential to a fair administration of justice. *United States* v. *Fernandez*, 913 F.2d 148, 154 (4th Cir. 1990); *Smith*, 780 F.2d at 1107. At the conclusion of the Section 6(a) hearing, CIPA requires the court to state in writing the reasons for its determinations as to each item of classified information. 18 U.S.C. App. 3, § 6(a).

C.   **Substitution Pursuant to Section 6(c)**

In the event that the court rules that one or more items of classified information meets the standard of admissibility, the government maintains the option of offering substitutions pursuant to Section 6(c). *Id.* at § 6(c). Under Section 6(c) the government may move to substitute either (1) a statement admitting relevant facts that the classified information would tend to prove, or (2)

a summary of the classified information instead of the classified information itself.  *Id.*;  *United States* v. *Rezaq*, 134 F.3d 1121, 1142-1143 (D.C. Cir. 1998).  The court must grant a motion for substitution if the "statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information."  *Id.*

The court may approve the substitutions provided by the government after conducting a detailed *in camera* comparison with the originals to determine whether the substitutions protect the defendant's right to a fair trial.  *Id.*  If the court restricts the use of classified information, Section 6(d) requires the court to seal, and preserve for use in the event of an appeal, the records of any *in camera* hearing held under the Act to decide such questions of admissibility.  *Id.* at § 6(d).

E.       **Section 6(e): Prohibition on disclosure of classified information by defendant**

If the court denies the government's motion for substitution under Section 6(c), Section 6(e)(1) permits the government, by affidavit from the Attorney General, to object to the disclosure of the classified information at issue.  *Id.* at § 6(e).  In such cases, the court, "shall order that the defendant not disclose or cause the disclosure of such information."  *Id.* at § 6(e)(1).  Section 6(e) lists the sliding scale of sanctions that the court may impose against the government as a means of compensating for the defendant's inability to present proof regarding specific items of classified information.  *Id.* at § 6(e)(2).

VI.   **Other Relevant CIPA Procedures**

A.       **CIPA Section 7:  Interlocutory Appeal**

Section 7(a) of the Act provides for an interlocutory appeal by the government from any decision or order of the trial judge "authorizing the disclosure of classified information, or for

refusing a protective order sought by the United States to prevent the disclosure of classified information."  *Id.* at § 7(a).  The term "disclosure" within the meaning of Section 7 includes both information that the court orders the government to divulge as well as information already possessed by the defendant which he intends to make public.  *See Pappas*, 94 F.3d at 799-800. Section 7(b) instructs the court of appeals to give expedited treatment to any interlocutory appeal filed under subsection (a).  *Id.* at § 7(b).

      **B.**      **CIPA Section 8:  Introduction of Classified Information**

      Section 8(a) provides that "[w]ritings, recordings, and photographs containing classified information may be admitted into evidence without change in their classification status."  *Id.* at § 8(a).  This provision simply recognizes that classification is an executive, not a judicial function.

      In order to prevent unnecessary disclosure of classified information, Section 8(b) permits the court to order admission into evidence of portions of a writing, recording, or photograph.  *Id.* at § 8(b).  Alternately, the court may order into evidence the entire writing, recording, or photograph with redaction of all or part of the classified information contained therein.  *Id.* Therefore, the court may admit into evidence part of a writing, recording, or photograph when fairness does not require consideration of the whole document.

      Section 8(c) provides a procedure to address the problem presented during a pretrial or trial proceeding when the defendant's counsel asks a question or embarks on a line of inquiry that would require the witness to disclose classified information not previously determined admissible.  Section 8(c) serves, in effect, as a supplement to the hearing provisions of Section 6(a) to cope with situations not effectively addressed under Section 6, where the defendant or

counsel fails to realize that the answer to a given question would reveal classified information. Upon the government's objection to such a question, the Court must take suitable action to avoid the improper disclosure of classified information.  *Id.* at § 8(c).

WHEREFORE, the United States requests that the court schedule a pretrial conference to establish a procedure and schedule for litigating the questions related to the admissibility of classified information and to determine whether defense counsel intends to request clearances and, if so, to establish deadlines for submitting the necessary information.

DATED this 2nd Day of July 2018.

JOHN W. HUBER
United States Attorney

*/s/ Robert A. Lund*_____
ROBERT A LUND
Assistant United States Attorney