JOHN W. HUBER, United States Attorney (No. 7226)
ROBERT A. LUND, Assistant United States Attorney (No. 9579)
KARIN FOJTIK, Assistant United States Attorney (No. 7527)
ALICIA H. COOK, Trial Attorney, U.S. Department of Justice (No. 8851)
MARK K. VINCENT, Assistant United States Attorney (No. 5357)
PATRICK T. MURPHY, Trial Attorney, U.S. Department of Justice (NY Bar #2750602)
ADAM L. SMALL, Trial Attorney, U.S. Department of Justice (MD Bar)
Attorneys for the United States of America
111 South Main Street, Suite 1800
Salt Lake City, Utah  84111
Telephone:  (801) 524-5682

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| UNITED STATES OF AMERICA, | Case No.  1:18-CR-00057-DB |
|---|---|
| Plaintiff, | **GOVERNMENT'S MOTION IN LIMINE SEEKING A PRETRIAL RULING REGARDING THE ADMISSIBILITY OF CUSTODIAL STATEMENTS MADE BY THE DEFENDANT** |
| vs. | |
| RON ROCKWELL HANSEN, | |
| Defendant. | District Judge Dee Benson<br>Chief Magistrate Judge Paul M. Warner |

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, and hereby moves *in limine* for a pre-trial ruling regarding the admissibility of custodial statements made by the defendant after advisement of rights and in response to questioning by agents of the Federal Bureau of Investigation (FBI).

## **STATEMENT OF FACTS**

On June 2, 2018, following a four-year FBI investigation that culminated with a sting operation, FBI Special Agent Jeff Carter arrested the defendant, Ron Hansen, near the airport in Seattle, Washington, just prior to Mr. Hansen's planned boarding of a flight to Beijing, China. At the time of arrest, Special Agent Carter advised Mr. Hansen of his constitutional rights. Mr. Hansen responded that he understood his rights, but he did not invoke any of those protections at that time. The agents did not question Mr. Hansen immediately following the arrest, and Mr. Hansen did not volunteer any statements. Thereafter, FBI agents delivered Mr. Hansen to FBI Headquarters in downtown Seattle. At 3:00 p.m., Special Agent Carter advised Mr. Hansen of his rights for a second time. At 3:04 pm, Mr. Hansen affirmatively stated that he understood his rights, and he immediately asserted his right to counsel.

After Mr. Hansen asserted his right to counsel, the agents started to leave the room, and Mr. Hansen inquired if he could ask a question. Special Agent Brent Rummler explained to Mr. Hansen that the agents could not speak to him after he invoked his right to counsel. Mr. Hansen then changed his mind and stated that he would sign the waiver form and speak to the agents. Special Agent Rummler stated that they would need to speak to the prosecutor before proceeding further. The agents then left the room and spoke to the prosecutor.

When the agents returned, Special Agent Rummler explained that if Mr. Hansen acknowledged that he understood his rights, if he affixed his initials next to each right's advisement on the form confirming that he read it, and if he signed a written waiver of his rights, the agents would speak to him. Hansen then read the rights form to himself, he placed his initials next to each advisement, and he signed the waiver. At 3:08 pm, Mr. Hansen verbally stated that he understood his rights and that he waived them.

Special Agent Rummler suggested that Mr. Hansen begin the conversation by explaining what happened that day, and Mr. Hansen began to provide an explanation for this conduct related to the sting operation.  Mr. Hansen began to contend that the concept of passing classified information originated with the confidential human source (CHS).  Being aware of the recorded conversations between Mr. Hansen and the CHS, the agents confronted Mr. Hansen regarding the veracity of his account, and Mr. Hansen ceased offering any further explanation and again invoked his right to counsel.  The agents immediately terminated the interview at 3:15 p.m.  The FBI video-recorded the entire interview with Mr. Hansen.

The United States provided defense counsel with all of the discovery pertaining to Mr. Hansen's custodial statements, including the video recording, the rights forms, and the FBI narrative reports.[1]  No further discovery pertains to the discrete legal issue raised by the instant motion.

## AUTHORITY

Pursuant to Federal Rule of Evidence 801(d)(2)(A), the United States seeks to offer into evidence at trial Mr. Hansen's statements to the FBI after his arrest.  The interview of Mr. Hansen constituted a custodial interrogation, thereby implicating the procedural safeguards announced in *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

Before the government may introduce a defendant's custodial statement, the government must establish by a preponderance of the evidence that the defendant knowingly, intelligently, and voluntarily waived the *Miranda* rights.  *Colorado v. Connelly*, 479 U.S. 157, 168-70 (1986).  To prove a valid waiver, the government must prove that (1) the waiver represented an "uncoerced choice," (2) the defendant understood both the nature and the right being waived and

---

[1] Certificate of Compliance and Request for Reciprocal Discovery (Doc. 24) filed August 16, 2018.

the consequence of the waiver. *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *United States v. Toro-Pelaez*, 107 F.3d 819, 826 (10th Cir. 1997) (valid waiver properly inferred because defendant properly advised of *Miranda* rights, spoke to officers, and then later asserted his rights); *United States v. Mejia*, 600 F.3d 12, 17-18 (1st Cir. 2010) (valid waiver properly inferred because defendant properly advised of *Miranda* rights and then willfully responded to questions).

The government bears the burden of establishing by a preponderance of the evidence that the statement was voluntary. *Lego v. Twomey*, 404 U.S. 477 (1972); *United States v. McCullah*, 76 F.3d 1087 (10th Cir. 1996). The test for determining the voluntariness of a statement is whether, in the totality of circumstances, law enforcement obtained the statement by overbearing the will of the accused. *Haynes v. Washington*, 373 U.S. 503, 513-14 (1963); *Townsend v. Sain*, 372 U.S. 293, 307 (1963); *United States v. Glover*, 104 F.3d 1570-79 (10th Cir. 1997).

In deciding whether the statement was obtained by overbearing the accused's will, the court focuses on the conduct, if any, of law enforcement officers in creating pressure and the individual's ability to resist such pressure. *Mincey v. Arizona*, 437 U.S. 385, 399-401 (1978); *Davis v. North Carolina*, 384 U.S. 737, 752 (1966). The question to be decided is whether the defendant's will was overborne and the capacity for self-determination critically impaired. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973); *McCullah*, 76 F.3d at 1101.

A court will consider a number of factors in assessing the totality of the circumstances surrounding the questioning, including "both the characteristics of the accused and the details of the interrogation." *Bustamonte*, 412 U.S. at 226. *See also*, *United States v. Roman-Zarate*, 115 F.3d 778, 783 (10th Cir. 1997); *United States v. Erekson*, 70 F.3d 1153, 1157 (10th Cir. 1995); *United States v. Lux*, 905 F.2d 1379, 1382 (10th Cir. 1990).

Among the factors commonly considered in determining whether a confession is coerced are: "(1) the age, intelligence and education of the defendant; (2) the length of the detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of her constitutional rights; and (5) whether the defendant was subjected to physical punishment." *Glover*, 104 F.3d at 1579.  *See also*, *United States v. Chalan*, 812 F.2d 1302, 1307 (10th Cir. 1987).

## **CONCLUSION**

As Mr. Hansen's statements relate directly to significant issues of consequence at trial, his statements to the agents constitute relevant evidence.  Federal Rule of Evidence 401.  As statements by a party opponent, the United States seeks to offer Mr. Hansen's statements in evidence at trial, pursuant to Federal Rule of Evidence 801(d)(2)(A).  Given the sensitivities associated with Mr. Hansen's initial invocation of rights, the United States moves *in limine* for a pre-trial ruling on the admissibility of those statements.  At the hearing, the United States intends to call Special Agent Carter as a testimonial witness, and the United States intends to offer into evidence the advisement of rights form containing the waiver and the video tape of the interview.

DATED this 29th  Day of August 2018.

                                              JOHN W. HUBER
                                              United States Attorney

                                              */s/ Robert A. Lund*
                                              ROBERT A LUND
                                              Assistant United States Attorney